Tracie Childs CA Bar No. 190806
tracie.childs@ogletree.com
Cameron Davila CA Bar No. 313438
cameron.davila@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
4660 La Jolla Village Drive, Suite 900
San Diego, CA  92122
Telephone:     858-652-3100
Facsimile:     858-652-3101

Attorneys for Defendant SIMS GROUP USA
CORPORATION

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISAI VALLIN individually, and on behalf of others similarly situated,<br><br>        Plaintiffs,<br><br>      v.<br><br>SIMS GROUP USA CORPORATION; and DOES 1 to 100, inclusive,<br><br>        Defendants. | Case No.<br><br>**CLASS ACTION**<br><br>**DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**<br><br>[Filed concurrently with Civil Cover Sheet; Certificate of Interested Parties; and Declarations of Jim Gutchewsky and Tracie Childs]<br><br>Complaint Filed:  November 15, 2024<br>Removal Filed: |

1    Defendant SIMS GROUP USA CORPORATION ("Sims") removes this action, originally

2   commenced in the Superior Court of the State of California for the County of San Mateo, Case No.

3   24-CIV-07168, to the United States District Court for the Northern District of California. Removal

4   is proper under 28 U.S.C. Section 1332(d) (the Class Action Fairness Act ["CAFA"]) and Section

5   1446 because (1) Plaintiff and other members of the putative class are citizens of a State different

6   from Sims; (2) the number of members of all proposed plaintiff classes in the aggregate is over 100;

7   and (3) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and

8   costs. All CAFA requirements are satisfied here.

9    Removal is also proper because this Court has original jurisdiction over Plaintiff's claims

10   under 28 U.S.C. § 1331, as this action arises under federal law. Specifically, Plaintiff's claims are

11   substantially dependent upon the interpretation of collective bargaining agreements across 5 separate

12   bargaining units that govern the terms and conditions of employment. The claims are, therefore,

13   preempted by Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. §

14   141 et seq., and this action may be removed to this Court pursuant to 28 U.S.C. § 1441(a) and (c).

15    In support of this removal, Sims states the following pursuant to 28 U.S.C. § 1446(a):

16   **I.    <u>BACKGROUND AND SUMMARY OF PLEADINGS</u>**

17    1.    Sims is a leader in metal recycling, its operations encompass the buying, processing,

18   and selling of ferrous and non-ferrous recycled metals. (Declaration of Jim Gutchewsky

19   ("Gutchewsky Decl."), ¶ 3.) Plaintiff Isai Vallin ("Plaintiff") was employed by Sims from

20   approximately May 31, 2018 to October 11, 2024. (*See* Gutchewsky Decl., ¶ 7; *see* Declaration of

21   Tracie Childs ("Childs Decl."), ¶ 2, Exhibit A – Plaintiff's Operative Complaint (the "Complaint"),

22   ¶ 4.) During the applicable limitations period, i.e. from November 15, 2020 to the present

23   (Complaint, ¶ 39) (the alleged "Class Period"), there are approximately 306 putative class members

24   in California who worked for Sims ("Putative Class Group"). (Gutchewsky Decl., ¶ 4.)

25    2.    Sims directly entered into collective bargaining agreements across 5 separate

26   bargaining units ("CBAs") with various unions ("Unions") applicable to the Putative Class Group.

27   (Gutchewsky Decl., ¶ 9.) All of the CBAs expressly provide for the wages, hours of work, and

28   working conditions of the covered employees. Additionally, they all provide premium wage rates for

all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage. They also all provide for meal periods for covered employees, and for a grievance procedure, including binding arbitration for any and all disputes. (Gutchewsky Decl., ¶¶ 10, 16; *see also* Exhibits 1-9.)

3.    On November 15, 2024, Plaintiff commenced this action in the Superior Court of California, County of San Mateo, Case No. 24-CIV-07168. Plaintiff served Sims with their Complaint on December 4, 2023. *See* Childs Decl., ¶ 2, Exhibit ["Ex."] A (containing true and correct copies of the Summons, Complaint, Civil Case Cover Sheet, and Civil Lawsuit).

4.    Sims filed its Answer to Plaintiff's Complaint in the Superior Court of California, County of San Mateo on January 2, 2025. (Childs Decl., ¶ 4; Ex. B, Answer.) Defendant's Answer to the Complaint is attached hereto as Exhibit B. (Childs Decl. ¶ 4, Exhibit B.)

5.    Plaintiff's Complaint seeks damages and penalties on behalf of himself and "[a]ll current and former hourly non-exempt employees employed by Defendants as direct employees as well as temporary employees employed through temp agencies in California at any time four (4) years prior to the filing of the initial Complaint in this matter through the date notice is mailed to a certified class." (Complaint, ¶ 39.) As detailed below, Plaintiff's Complaint is subject to CAFA, and Plaintiff's Complaint implicates federal law because the terms and conditions of the Putative Class Group's employment are subject to at least one of the CBAs outlined above. (Gutchewsky Decl., ¶ 10; Exhibits 1-9.)

6.    A copy of this Notice of Removal will be served on Plaintiff and filed with the Superior Court of California for the County of San Mateo. Exhibits A-B contain all process, pleadings, and orders served on Defendant in accordance with 28 U.S.C. § 1446(a), and no other proceedings have been held in this action. (Childs Decl. ¶¶ 5-6.)

## II.    <u>REMOVAL IS PROPER UNDER CAFA</u>

7.    Removal is proper given Plaintiff's allegations and claims. Plaintiff's Complaint asserts the following claims on a class-wide basis: (1) failure to pay wages for all hours worked at minimum wage (Lab. Code §§ 1194 and 1197); (2) failure to pay overtime wages for daily overtime worked (Lab. Code §§ 510 and 1194); (3) failure to authorize or permit meal periods (Lab. Code §§

512 and 226.7); (4) failure to authorize or permit rest periods (Lab. Code § 226.7); (5) failure to provide complete and accurate wage statements (Lab. Code § 226); (6) failure to timely pay all earned wages and final paychecks due at time of separation of employment (Lab. Code §§ 201, 202, 203); (7) violation of California Business and Professions Code §§ 17200, et seq. (Exhibit 1, Complaint.).

8.      CAFA grants district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant; the number of members of all proposed plaintiff classes in the aggregate is over 100; and where the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs. (28 U.S.C. § 1332(d).) CAFA authorizes such removal under 28 U.S.C. Section 1446.

9.      This Court has original jurisdiction over the Action under CAFA because it is a civil case filed as class action wherein at least one member of the putative class of plaintiffs is a citizen of a state different from Defendant; the number of individuals in Plaintiff's proposed classes in the aggregate is over 100; and the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

A.      CAFA's Diversity of Citizenship Requirement Is Satisfied

10.      CAFA's diversity requirement is satisfied "so long as 'any member of a class of plaintiffs is a citizen of a State different from any defendant.'" (*Bradford v. Bank of Am. Corp.*, No. CV 15-5201-GHK (JCX), 2015 WL 5311089, at *3 (C.D. Cal. Sept. 10, 2015) (citing *California v. IntelliGender, LLC*, 771 F.3d 1169, 1172 (9th Cir. 2014)); *Rodgers v. Central Locating Service, Ltd.*, 412 F. Supp. 2d 1171, 1175 (W.D. Wa. 2006); 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1453(a) and (b).)

11.      Under 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any state by which it has been incorporated and the state where it has its principal place of business." The Supreme Court has held the "principal place of business" is best read as referring to the place where a company's officers direct, control, and coordinate its activities. (*Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1184 (2010).) The court further clarified the principal place of business was the place where a

1    company "maintains its headquarters – provided that the headquarters is the actual center of

2    direction, control and coordination." (*Id*.)

3        12.    Sims Group USA Corporation is a corporation organized under the laws of the State

4    of Delaware and has its principal place of business in Chicago, Illinois. Its executive management

5    has directed, controlled, and coordinated its activities from there. Sims Group USA Corporation has

6    not organized itself under the laws of California nor had its principal place of business here.

7    (Gutchewsky Decl., ¶ 8.) Minimal diversity is established because, at all relevant times, at least one

8    member of the putative class of plaintiffs is a citizen of a State different from Sims. (*Id*., ¶¶ 7-8.)

9        **B.    CAFA's Class Size Requirement Is Satisfied**

10        13.    Plaintiff brings the Action pursuant to California Code of Civil Procedure Section 382

11    on behalf of the following "Class": "All current and former hourly non-exempt employees employed

12    by Defendants as direct employees as well as temporary employees employed through temp agencies

13    in California at any time four (4) years prior to the filing of the initial Complaint in this matter

14    through the date notice is mailed to a certified class." (Childs Decl., ¶ 2, Ex. A, Complaint, ¶ 39.)

15        14.    While Sims disputes Plaintiff's allegations, from November 15, 2020, through the

16    date of the Jim Gutchewsky (January 3, 2025), the putative class includes, in the aggregate, at least

17    306 non-exempt employees. (Gutchewsky Decl., ¶ 4.) Thus, CAFA's size requirement is satisfied.

18        **C.    CAFA'S Requisite $5 Million Amount in Controversy Is Satisfied**

19        15.    CAFA authorizes the removal of class action cases in which the amount in

20    controversy for all class members exceeds $5,000,000. (28 U.S.C. § 1332(d).)

21        16.    Under CAFA, the "District Court [must] determine whether it has jurisdiction by

22    adding up the value of the claim of each person who falls within the definition of [a plaintiff's]

23    proposed class and determine whether the resulting sum exceeds [$5,000,000]." (*Standard Fire Ins.*

24    *Co. v. Knowles*, 133 S.Ct. 1345, 1348 (2013).) Courts look to the allegations in the complaint in

25    determining the amount in controversy.(*LaCross v. Knight Trans. Inc.*, 775 F.3d 1200, 1202 (9th Cir.

26    2015) ("[O]ur first source of reference in determining the amount in controversy [is] plaintiff's

27    complaint").)

28        17.    For purposes of removal, "[i]n determining the amount in controversy, the Court

1    accepts the allegations contained in the complaint as true and assumes the jury will return a verdict

2    in the plaintiff's favor on every claim." (*Henry v. Central Freight Lines, Inc.*, 692 F. App'x 806 (9th

3    Cir. 2017) (citing *Campbell v. Vitran Express, Inc.*, 471 F. App'x. 646, 648 (9th Cir. 2012)).) In

4    determining whether the amount in controversy requirement is met, "the sum claimed by the plaintiff

5    controls if the claim is apparently made in good faith." (*Ibarra v. Manheim Investments, Inc.*, 775

6    F.3d 1193, 1197 (9th Cir. 2015) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283,

7    289 (1938)).)

8        18.    In a recent Ninth Circuit decision, it noted "a removing defendant's notice of removal

9    'need not contain evidentiary submissions' but only plausible allegations of the jurisdictional

10    elements." (*Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (citing *Ibarra v.*

11    *Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).) In assessing the amount in

12    controversy, a removing defendant may rely on a chain of reasoning that includes assumptions. (*Id.*

13    at 925.) Assumptions are reasonable if they are founded on the allegations of the complaint. (*Id.*)

14        19.    Among other things, Plaintiff seeks the recovery of unpaid wages, waiting time

15    penalties, itemized wage statement penalties, meal and rest period premium pay, and reasonable

16    attorney fees and costs, on behalf of himself and the putative classes. (*See* Childs Decl., ¶ 2, Ex. A,

17    Complaint.) The Complaint, on its face based on the allegations in it, satisfies the $5,000,000

18    threshold for CAFA removal.[1] (*See* 28 U.S.C. § 1332(d).)

19            1.    Relevant Putative Class Group Data

20        20.    Plaintiff seeks to certify a class group from November 15, 2020 to the present. From

21    November 15, 2020 to the Notice of Removal, the putative class includes, in the aggregate, at least

22    306 non-exempt employees in California. Those employees worked at least 32,632 workweeks. The

23    average hourly rate for current non-exempt employees is $29.60. (Gutchewsky Decl., ¶ 4.)

24        21.    From November 15, 2021, to the present, at least 135 non-exempt employees and

25

26    _____

[1] In alleging the amount in controversy for purposes of CAFA, Sims does not concede in any way
that the allegations in the Complaint are true or accurate, or that Plaintiff is entitled to any of the

27    monetary relief requested in the Complaint. Nor does Sims concede that any or all putative class
members are entitled to any recovery in this case, or are appropriately included in the action. Sims

28    also does not concede Plaintiff can bring his claims on class or representative basis, or that the
appropriate venue for the claims is in court.

1  putative class members in California separated their employment. The average hourly rate for current

2  non-exempt employees is $29.60. This equals an average daily rate (8 hours) of approximately

3  $236.80. (Gutchewsky Decl., ¶ 5.)

4      22.    From November 15, 2023, to the present, at least 189 non-exempt employees in

5  California received at least 9,252 wage statements. (Gutchewsky Decl., ¶ 6.)

6          2.    <u>Waiting Time Penalties</u>

7      23.    Plaintiff alleges that "Defendants maintained a policy or practice of not paying hourly

8  employees all earned wages timely upon separation of employment. Defendants' failure to always

9  pay Plaintiff and the Waiting Time Class all wages earned prior to separation of employment timely

10  in accordance with Labor Code sections 201 and 202 was willful." (Childs Decl., ¶ 2, Ex. A,

11  Complaint, ¶¶ 90-91.) Plaintiff further alleges that "Plaintiff and the Waiting Time Class are entitled

12  to continuation of their wages, from the day their earned and unpaid wages were due until paid, up

13  to a maximum of thirty (30) days." (*Id.*, ¶ 93.)

14      24.    California Labor Code section 203 provides "[i]f an employer willfully fails to pay

15  … any wages of an employee who is discharged or who quits, the wages of the employee shall

16  continue as a penalty from the due date thereof at the same rate until paid or until an action therefor

17  is commenced; but the wages shall not continue for more than 30 days." (*Pineda v. Bank of Am.,*

18  *N.A.*, 50 Cal. 4th 1389, 1398 (2010).) The limitations period for such waiting time penalty claims is

19  three years. (*Id.* at 1400.)

20      25.    From November 15 2021, to the present, at least 135 non-exempt employees and

21  putative class members in California separated their employment. The average hourly rate for current

22  non-exempt employees is $29.60. This equals an average daily rate (8 hours) of approximately

23  $236.80. (Gutchewsky Decl., ¶ 5.)

24      26.    Therefore, based on Plaintiff's allegations, the amount in controversy for waiting time

25  penalties alone is at least **$959,040** ($29.60 per hour x 8 hours x 30 days x 135 putative class

26  members). *See Crummie v. Certified Safety, Inc.*, No. 17-CV-03892-RS, 2017 WL 4544747, at *3

27  (N.D. Cal. 2017) (finding it "completely reasonable" for the defendant to assume the maximum, 30-

28  day period of waiting time penalties where the allegations support the assumption); *Marentes v. Key*

1  *Energy Servs. Cal., Inc.*, No. L13–CV–02067 AWI, 2015 WL 756516, at *9 (E.D. Cal. Feb. 23,
2  2015) (where "wages are alleged to have not been paid, the full thirty days may be used for each of
3  the putative class members.").

### 3.   Wage Statement Penalties

5  27.    Plaintiff also alleges "Defendants provided Plaintiff and the Wage Statement Class
6  with itemized statements which stated inaccurate information including, but not limited to, the
7  number of hours worked, gross wages earned, and the net wages earned. Defendants knowingly and
8  intentionally put in place practices which deprived employees of wages and resulted in Defendants
9  knowingly and intentionally providing inaccurate wage statements." (Childs Decl., ¶ 2, Ex. A,
10  Complaint, ¶¶ 81-82.) Plaintiff further alleges, "As a result of Defendants' unlawful conduct,
11  Plaintiff and the Wage Statement Class have suffered injury." (*Id.*, ¶ 83.)

12  28.    On behalf of himself and the putative class, Plaintiff seeks statutory penalties under
13  California Labor Code § 226(e), which provides for the greater of all actual damages or $50.00 for
14  the initial pay period in which a violation occurred and $100.00 for each subsequent pay period in
15  which a violation occurred, up to $4,000.00 per putative class member. (*Id.*, ¶¶ 84-86; Cal. Lab. Code
16  § 226(e).)

17  29.    A one-year statutory period applies to Plaintiff's claim for wage statement penalties.
18  (Cal. Code Civ. Proc. §340(a); *Falk v. Children's Hospital Los Angeles*, 237 Cal. App.4th 1454,
19  1469 (2015).)

20  30.    As noted above, from November 15, 2023, to the present, at least 189 non-exempt
21  employees in California received at least 9,252 wage statements. (Gutchewsky Decl., ¶ 6.) Therefore,
22  based on Plaintiff's allegations, the amount in controversy for wage statement penalties is **$915,750**
23  (189 wage statements x $50 = $9,450; 9,063 wage statements x $100 = $906,300 [$9,450+
24  $906,300= $915,750]). For purposes of removal, Sims excluded any pay periods above 40 for a given
25  employee (i.e., a $3,950 penalty), so the maximum statutory penalty alleged by Plaintiff of $4,000
26  (which Sims denies) is not implicated. (*Id.*)

### 4.   Meal Period Premium Pay

28  31.    During the alleged class period, Plaintiff alleges that "Defendant routinely required

employees to miss their meal breaks, take short meal breaks less than 30 minutes, work through their meal breaks, and/or interrupt them during meal breaks." (Childs Decl., ¶ 2, Ex. A, Complaint, ¶ 63(a).) Plaintiff further alleges that Defendant required Plaintiff and the Meal Period Class to "always monitor" their employer-issued walkie-talkies resulting in Plaintiff and the Meal Period Class remaining on duty during their off-the-clock meal breaks." (*Id.*, ¶ 63(b).)

32.    The Ninth Circuit has made clear that assumptions for an amount in controversy calculation "cannot be pulled from thin air[.]" (*Ibarra v. Manheim Invs.*, Inc., 775 F.3d 1193, 1199 (9th Cir. 2015).) However, "in assessing the amount in controversy, a removing defendant is permitted to rely on 'a chain of reasoning that includes assumptions'…[which] may be reasonable if [they are] founded on the allegations of the complaint." (*Arias v. Residence Inn by Marriott*, No. 19-55803, 2019 WL 4148784, at *4 (9th Cir. Sept. 3, 2019).)

33.    At the outset, "Defendant is not 'required to comb through its records to identify and calculate the exact frequency of violations.'" (*Andrade v. Beacon Sales Acquisition, Inc.*, CV 19-06963-CJC(RAOx), 2019 WL 4855997, at *4 (E.D. Cal. Oct. 1, 2019) (quoting *Lopez v. Aerotek, Inc.*, 2015 WL 2342558, at *3 (C.D. Cal. May 14, 2015)).) Courts in the Ninth Circuit have frequently held a violation rate between 20% and 60% to be reasonable when the plaintiff alleges a "pattern and practice" or "policy and practice" of violations. [*See, e.g.*, *Olson v. Becton, Dickinson & Co.*, No. 19CV865-MMA (BGS), 2019 WL 4673329, at *4 (S.D. Cal. Sept. 25, 2019) (finding a 25% violation rate to be appropriate based on the plaintiff's "pattern and practice" allegation); *Bryant v. NCR Corp.*, 284 F.Supp.3d 1147, 1151 (S.D. Cal. 2018) (using a 60% violation rate for meal period claim and 30% violation rate for rest period claim where the plaintiff alleges a "policy and practice" of violations); *Alvarez v. Office Depot, Inc.*, No. CV 17-7220 PSG (AFMx), 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (using a 60% violation rate for meal period claim where the plaintiff alleges a "uniform practice" of violations). The Eastern District has held previously that a 20% to 60% violation rate for meal period and rest period violations is reasonable. *See Sanchez v. Abbott Laboratories*, No. 2:20-cv-01436-TLN-AC, 2021 WL 2679057, at *4-5 (E.D. Cal. June 30, 2021); *see also Beckwith-Cohen v. VibrantCare Rehabilitation, Inc.*, No. 2:21-cv-01180-TLN-JDP, 2021 WL 5905956, at *4 (E.D. Cal. Dec. 14, 2021).]

34.     In *Marcy v. J.R. Simplot Co.* (E.D. Cal., Mar. 27, 2023, 2:22-cv-00523-TLN-CKD), the Court found a 60% violation rate was presumed plausible given plaintiff's "consistent policy" allegation of failing to pay meal premiums and of failing to pay them at the proper rate.

35.     Plaintiff's allegations are nearly identical to the plaintiff in *Marcy*. He claims *Defendants routinely* required employees to miss their meal breaks, take short meal breaks less than 30 minutes, work through their meal breaks, and/or interrupt them during meal breaks. (Childs Decl., ¶ 2, Ex. A, Complaint, ¶ 63(a).)

36.     From November 15, 2020 to the present, Sims employed, in the aggregate, at least 306 employees in California who worked approximately 32,632 work weeks and whose average hourly rate was approximately $29.60. (Gutchewsky Decl., ¶ 4.)

37.     Based on the Plaintiff's allegation that *Defendants* failed to "routinely" provide meal breaks and premiums thereon, Defendant utilized a reasonable estimate of 60% meal period violation rates (or 3 missed meal periods per week), resulting in a total amount of meal period premium pay in controversy of approximately **$2,897,721** (32,632 work weeks x 3 total violations per work week x $29.60 per hour = $2,897,721).

38.     But even if Defendant utilized a conservative estimate of 40% meal period violation rate (or 2 violations per week), resulting in a total amount of meal period premium pay in controversy of approximately **$1,931,814** (32,632 work weeks x 2 violations per work week x $29.60 per hour = $1,931,814).

39.     As noted above, case law finds that similar allegations support these violation rates as a matter of law. (*See, e.g., Elizarraz v. United Rentals, Inc.*, No. 2:18-CV-09533-ODW (JC), 2019 WL 1553664, at *3-4 (C.D. Cal. Apr. 9, 2019) (using 50% violation rate for meal period claim and 30% violation rate for rest period claim); *Alvarez v. Off. Depot, Inc.*, No. CV 17-7220 PSG (AFMx), 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (using 60% violation rate).)

5.     Further Data

40.     For purposes of this removal, waiting time penalties, meal period penalties, and wage statement penalties alone are more than sufficient to support the required $5,000,000 threshold amount in controversy. However, Sims has provided data sufficient to calculate and support, based

1  on Plaintiff's allegations, an even greater amount in controversy based on alleged rest period

2  penalties, unpaid overtime, and Plaintiff's other claims. (Gutchewsky Decl., ¶¶ 4-6.) There is no

3  doubt that, as alleged, the amount in controversy exceeds the requisite threshold.

### 6. Attorney Fees

5  41.    There is at least **$4,772,511** in controversy ($915,750 in wage statement penalties +

6  $2,897,721 meal period premiums + $959,040 in waiting time penalties = $4,772,511).

7  42.    Plaintiff also seeks attorney fees in connection with the above claims. (Childs Decl.,

8  ¶ 2, Ex. A, Complaint, Prayer for Relief.) In the Ninth Circuit, 25% of the total recovery is the

9  "benchmark level" for reasonable attorney fees in class action cases. (*Garibay v. Archstone*

10  *Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013).) Using this 25% benchmark, courts have

11  included attorney fees for 25% of the total recovery in determining the amount in controversy under

12  CAFA. *Id.* (contemplating inclusion of 25% of total recovery in attorney fees under CAFA);

13  *Rwomwijhu v. SMX, LLC*, No. CV1608105ABPJWX, 2017 WL 1243131, at *6 (C.D. Cal. Mar. 3,

14  2017) (including fees in calculation, noting that "courts in the Ninth Circuit, including this one, have

15  allowed an estimated fee award of 25% of a plaintiff's damages in calculating the amount in

16  controversy under CAFA"); *Altamirano v. Shadow Indus., Inc.*, No. C-13-0939 EMC, 2013 WL

17  2950600, at *13 (N.D. Cal. Jan. 14, 2013) (including 25% attorney's fees to increase the amount-in-

18  controversy to above $5,000,000 CAFA threshold).

19  43.    Assuming an award of attorney fees in the benchmark amount of 25% of the total

20  recovery, the amount in controversy for such fees is $1,193,128 ($4,772,511 x 0.25).

### 7. Summary

22  44.    Based on Plaintiff's allegations, the amount in controversy is at least **$5,965,638**

23  ($1,193,128 [attorney fees] + $4,772,511 [alleged damages]). Even excluding Plaintiff's other

24  claims, including rest period penalties, and overtime wages and minimum wages, the Complaint

25  easily satisfies the $5 million threshold.

### III. REMOVAL IS PROPER UNDER FEDERAL QUESTION JURISDICTION UNDER THE LABOR MANAGEMENT RELATIONS ACT

45.    This Court also has original jurisdiction under 28 U.S.C. § 1331, and this case may

1    be removed pursuant to the provisions of 28 U.S.C. § 1441(a), because it is a civil action that presents

2    a federal question.

3        46.    Plaintiff's claims are either based upon or preempted by federal law, specifically

4    Section 301 of the LMRA ("Section 301"), 29 U.S.C. § 185. Under Section 301, "[s]uits for violation

5    of contracts between an employer and a labor organization representing employees in an industry

6    affecting commerce . . . may be brought in a district court for the United States having jurisdiction

7    of the parties without regard to the amount in controversy or without regard to the citizenship of the

8    parties." (*Firestone v. S. Cal. Gas Co*., 219 F.3d 1063, 1065 (9th Cir. 2000).)

9        47.    Section 301 preempts state law claims requiring interpretation of a CBA. "[T]he pre-

10    emptive force of § 301 is so powerful as to displace entirely any state cause of action for violation

11    of contracts between an employer and a labor organization." (*Franchise Tax Bd. of State of Cal. v.*

12    *Construction Laborers Vacation Trust for Southern Cal*., 463 U.S. 1, 23 (1983).) Section 301 also

13    preempts "any state [law] claim whose outcome depends on analysis of the terms of the agreement."

14    (*Newberry v. Pacific Racing Ass'n*, 854 F.2d 1142, 1146 (9th Cir. 1988).) "[T]he key to determining

15    the scope of Section 301 preemption is not based on how the complaint is framed," it is based on

16    whether resolution of the claims requires "referring to the terms of the…[CBA]." (*Id*.) The reason is

17    that "the interpretation of [CBAs] is exclusively a matter for arbitration under federal law." (*Levy v.*

18    *Skywalker Sound*, 108 Cal.App.4th 753, 762 (2003).) "Once preempted, 'any claim purportedly

19    based on [a] state law is considered, from its inception, a federal claim, and therefore arises under

20    federal law'." (*Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007) (citing

21    *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987)).)

22        48.    A plaintiff cannot avoid Section 301 preemption by "artfully pleading" a claim to

23    allege state law violations. (*Hyles v. Mensing*, 849 F.2d 1213, 1215 (9th Cir. 1988).) For example,

24    where "[r]esolution of plaintiffs' claim to overtime pay ... cannot be decided by mere reference to

25    unambiguous terms of the agreement," it is preempted. (*Id*.) Similarly, where a collective bargaining

26    agreement satisfies the requirements of Labor Code Section 514, and the right to overtime exists

27    solely as a result of the CBA, and the claim is preempted under Section 301 of the LMRA. (*Curtis*

28    *v. Irwin Indus., Inc.*, 913 F.3d 1146, 1154-55 (9th Cir. 2019).) Courts also find meal and rest period

claims to be preempted where the applicability of the Labor Code provisions require analysis and interpretation of a CBA. (*See e.g.*, *Coria v. Recology, Inc.*, 63 F.Supp.3d 1093, 1097 (N.D. Cal. 2014); *Ayala v. Destination Shuttle Servs. LLC*, No. cv-13-6141 GAF (PJWx), 2013 WL 12092284, at *4 (C.D. Cal. Nov. 1, 2013).) Similarly, where a collective bargaining agreement satisfies the requirements of Labor Code Section 512(e), and the right meal periods exists solely as a result of the CBA, and the claim is preempted under Section 301 of the LMRA. (*Araquistain v. Pac. Gas & Elec. Co.*, 229 Cal.App.4th 227, 236, 238 (2014); *Coria*, 63 F.Supp.3d at 1097.)

49.    Section 301 of the LMRA provides a basis for federal jurisdiction, and authorizes federal courts to develop a federal common law of the interpretation of collective bargaining agreements. (*Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 411 (1988).) To ensure uniform interpretations of collective bargaining agreements, federal common law preempts the use of state law in collective bargaining agreement interpretation and enforcement. (*Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Lucas Flour Co.*, 369 U.S. 95, 103–04 (1962); *Lingle*, 486 U.S. at 411.)

50.    Further, all state law claims that require interpretation of a collective bargaining agreement must be brought pursuant to Section 301 of the LMRA. [*Allis-Chalmers Corp. v. Lueck*, 571 U.S. 202, 211 (1985); *Newberry v. Pac. Racing Ass'n*, 854 F.2d 1142, 1146 (9th Cir. 1988) (concluding "[t]he preemptive force of section 301 is so powerful that it displaces entirely any state cause of action for violation of a collective bargaining agreement . . . [and] any state claim whose outcome depends on analysis of the terms of the agreement."); *see also Voorhees v. Naper Aero Club, Inc*., 272 F.3d 398, 403 (7th Cir. 2001) (noting that Section 301 is one of "only two areas in which the Supreme Court has found that Congress intended completely to replace state law with federal law for purposes of federal jurisdiction").]

51.    Section 301 preempts California state law claims that are substantially dependent upon interpretation of a CBA. (*Firestone*, 219 F.3d at 1066-67 (claim preempted by Section 301 where the CBA had to be interpreted to resolve the plaintiff's wage claims).) This remains true even where interpretation was required to evaluate the employer's defense to a plaintiff's state law cause of action. (*See Levy v. Skywalker Sound*, 108 Cal. App. 4th 753, 769 (2003) (claim for unpaid wages

preempted because it "rest[ed] entirely" on a claim that plaintiff was "entitled . . . to wages at the level set by the CBA").) Thus, any suit "alleging a violation of a provision of a labor contract must be brought under § 301 and be resolved by reference to federal law." (*Curtis*, 913 F.3d at 1152 ("A state rule that purports to define the meaning or scope of a term in a contract suit therefore is preempted by federal labor law.").)

52.     Adjudicating Plaintiff's Complaint will require interpretation of the CBAs. First, Plaintiff's claims are premised upon, and therefore derivative of, the various underlying violations of the California Labor Code identified in Plaintiff's Complaint. (*See* Complaint, *generally* (basing claims on Labor Code violations).) As detailed below, many (if not all) of the underlying labor code violations alleged in Plaintiff's Complaint are preempted due to the CBAs. Thus, Section 301 of the LMRA preempts the underlying Labor Code violations. (*See*, *e.g.*, *Lingle*, 486 U.S. at 405-06 ("[I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law . . . is preempted").)

        A.     The Putative Class Group Is Governed by a CBA

53.     Courts have found that LMRA preemption applies, and thus removal is appropriate, even where the claims of the "vast majority" of putative group members are subject to LMRA preemption. (*Sachs v. Pankow Operating, Inc.*, 2:21-cv-08998-AB (ADSx), 2022 WL 489696 at *6 (C.D. Cal. Feb. 16, 2022).)

54.     As noted above, Sims entered into CBAs across 5 separate bargaining units that apply to Putative Class Group members during the Class Period. (Gutchewsky Decl. ¶ 9.) All of the CBAs expressly provide for the wages, hours of work, and working conditions of the covered employees. Additionally, they all provide premium wage rates for all overtime hours worked and a regular hourly rate of pay for covered employees of not less than 30 percent more than the state minimum wage. They also all provide for meal periods, and for a grievance procedure for disputes, including binding arbitration for all disputes. (Gutchewsky Decl., ¶¶ 10, 16; Exhibits 1-9.)

55.     At all relevant times alleged in the Complaint, Sims has been a company engaged in commerce and in an industry affecting commerce within the meaning of Sections 2(2), 2(6), and 2(7) of the NLRA and Section 301(a) of the LMRA, 29 U.S.C. §§ 152(2), (6), (7) and 185(a).

1   (Gutchewsky Decl., ¶ 3.)

2       56.    The CBAs across 5 separate bargaining units were negotiated with various Unions for

3   which members of the Putative Class Group are members and which exist for the purpose of

4   addressing employee grievances, labor disputes, wages, rates of pay, hours of employment,

5   conditions of work, discipline, and discharge. (See Gutchewsky Decl., ¶¶ 9, 10; Exhibits 1-9.) At all

6   relevant times, these unions have been, and are, a labor organization within the meaning of Section

7   2(5) of the NLRA and 301(a) of the LMRA, 29 U.S.C. §§ 152(5) and 185(a).

8       57.    Each of the CBAs specifically recognize the union or labor organization as the

9   exclusive representative for each of their respective covered employees for the purposes of collective

10  bargaining to establish rates of pay, hours of work, and other conditions of employment. Further,

11  they provide the parties agree the CBA shall cover all working conditions, wages, and hours of

12  employment affecting the covered employees. (Gutchewsky Decl., ¶ 10, Exhibits 1-9.)

13      B.    <u>The Claims are Preempted by the LMRA</u>

14      1.    <u>Plaintiff's Failure to Reference Section 301 of the LMRA in His Complaint

15      Does Not Preclude Removal</u>

16      58.    The Complaint omits the fact that Plaintiff and the Putative Class Group's

17  employment claims are subject to one of the CBAs. However, a plaintiff may not be permitted to

18  "artfully plead" his complaint to conceal the true nature of the complaint. (*Young v. Anthony's Fish

19  Grottos, Inc*., 830 F.2d 993,997 (9th Cir. 1987).) Thus, the Court may properly look beyond the face

20  of the Complaint to determine whether the claims asserted are in fact preempted by Section 301. (*See

21  Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003).) Additionally, the

22  Court may properly look to the facts stated in the Notice of Removal "to clarify the action a plaintiff

23  presents and to determine if it encompasses an action within federal jurisdiction." (*Schroeder v.

24  Trans World Airlines, Inc.*, 702 F.2d 189, 191 (9th Cir. 1983), *overruled in part on other grounds in

25  Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241 (9th Cir. 2009).)

26      59.    An artfully pled state law claim is properly "re-characterized" as a federal claim under

27  the "complete preemption" doctrine, which provides that the preemptive force of Section 301 of the

28  LMRA "converts an ordinary state law complaint into one stating a federal claim for purposes of the

1  well-pleaded complaint rule" and is removable to federal court. (*Caterpillar Inc. v. Williams*, 482

2  U.S. 386, 393 (1987); *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 23

3  (1983) ("[I]f a federal cause of action completely preempts a state cause of action, any complaint

4  that comes within the scope of the federal cause of action necessarily 'arises' under federal law.").)

5        60.     To determine whether a claim alleging violations of state law is preempted by Section

6  301(a) of the LMRA, the Ninth Circuit employs a two-step test. (*Curtis*, 913 F.3d at 1152.) First, the

7  Court asks "whether the asserted cause of action involves a 'right [that] exists solely as a result of

8  the CBA.'" (*Id.* (quoting *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir.

9  2016)).) Under this test, a claim is preempted if it seeks "purely to vindicate a right or duty created

10  by the CBA itself." (*Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 921 (9th Cir. 2018).) If so, "the

11  claim is preempted, and [the] analysis ends there." (*Burnside*, 491 F.3d at 1059.) If not, the courts

12  consider whether a plaintiff's state law right is substantially dependent on analysis of the CBA.

13  (*Curtis*, 913 F.3d at 1153.) If claims are dependent on interpretation of the CBA, then the claim is

14  also preempted by Section 301. (*Franco v. E-3 Sys*, No. 19-cv-01452-HSG, 2019 WL 6358947, at

15  \*2 (N.D. Cal. Nov. 8, 2019) (citing *Burnside*, 491 F.3d at 159-60).)

16            C.    <u>Plaintiff's Claims are Preempted by the LMRA</u>

17        61.     Plaintiff's allegations that Sims violated the California Labor Code involve various

18  rights that "exist solely as a result of the CBA" and/or are "inextricably intertwined with

19  consideration of the terms of the labor contract." (*Allis-Chambers*, 471 U.S. at 213.) Specifically,

20  Plaintiff's Complaint seeks damages and civil penalties, based on the following alleged violations:

21  (1) failure to pay wages for all hours worked at minimum wage (Lab. Code §§ 1194 and 1197); (2)

22  failure to pay overtime wages for daily overtime worked (Lab. Code §§ 510 and 1194); (3) failure to

23  authorize or permit meal periods (Lab. Code §§ 512 and 226.7); (4) failure to authorize or permit

24  rest periods (Lab. Code § 226.7); (5) failure to provide complete and accurate wage statements (Lab.

25  Code § 226); (6) failure to timely pay all earned wages and final paychecks due at time of separation

26  of employment (Lab. Code §§ 201, 202, 203); (7) violation of California Business and Professions

27  Code §§ 17200, et seq.

28        62.     **Plaintiff's Overtime and Unpaid Wage Claims:** Plaintiff's Complaint seeks

1   damages, in part, for Sims's alleged failure to pay overtime. Specifically, Plaintiff alleges that Sims

2   failed "to pay Plaintiff and similarly situated employees at their overtime rate of pay for all overtime

3   hours worked, in violation of Labor Code sections 510, 1194, and Wage Order 1." (Complaint, ¶ 23.)

4   In other words, the focus of Plaintiff's overtime claims is that he and other Putative Class Group

5   members were not properly compensated for all overtime worked.

6          63.    An overtime claim is preempted where "[r]esolution of plaintiffs' claim to overtime

7   pay [or other wages] … cannot be decided by mere reference to unambiguous terms of the

8   agreement." (*Firestone*, 281 F.3d at 802.) Further, Labor Code § 514 states that § 510 (the Labor

9   Code's overtime provisions) "do not apply to an employee covered by a valid collective bargaining

10  agreement if the agreement expressly provides for the wages, hours of work, and working conditions

11  of the employees, and if the agreement provides premium wage rates for all overtime hours worked

12  and a regular hourly rate of pay for those employees of not less than 30 percent more than the state

13  minimum wage." "Therefore, if the CBA that applies to an employee is a 'qualifying CBA' carved

14  out from Section 510 by Section 514, then the right to overtime pay exists solely as a result of the

15  CBA and therefore is preempted under § 301." (*Loaiza v. Kinkisharyo Intern., LLC*, No.

16  CV1907662JAKKSX, 2020 WL 5913282, at *3 (C.D. Cal. Oct. 6, 2020); *Franco*, 2019 WL

17  6358947, at *4.)

18         64.    Assuming, *arguendo*, that Plaintiff's underlying claims are valid, the CBAs expressly

19  satisfy the requirements of Section 514, because they provide the wages, hours of work, working

20  conditions, premium wage rates for overtime, and an hourly pay rate that is greater than 30 percent

21  more than the California minimum wage. (Gutchewsky Decl. ¶ 10, Exhibits 1-9.) All of the

22  employee-categories in the CBAs wage scale are assigned hourly rates of pay that exceed Labor

23  Code § 514's requirement. (*Id.; see also Sachs v. Pankow Operating, Inc.*, 2:21-cv-08998-AB

24  (ADSx), 2022 WL 489696 at *6 (C.D. Cal. Feb. 16, 2022) (§ 514 requirements met when the "vast

25  majority" of the employee categories in the CBA are assigned hourly rates of pay that exceed this

26  requirement).) As a result, these overtime wage claims are preempted under the LMRA analysis, and

27  the Court will have to engage in this analysis to resolve the claims.

28         65.    Additionally, the Court will need to interpret the CBAs to resolve any overtime claim.

The Court will have to interpret the CBAs for a variety of information, including (1) assessing the wage scale of the respective CBA the appropriate rate of pay for numerous groups of employees in the separate CBAs across 5 different bargaining units; (2) determining the applicable rates of pay and premium rates, given that the CBAs provide for items like different premium rates depending on the day or hours worked as defined; and (3) determining which time is compensable based on the timekeeping/overtime rules in the CBAs. (See Gutchewsky Decl., ¶ 10, Exhibits 1-9, and Gutchewsky Decl., ¶ 11, Exhibit 2 (Section 8, providing detailed provisions for payment of overtime).) Thus, if an employee has hours that he or she claims have not been compensated, whether such time is compensable, the rate at which they need to be paid for that time, and the hours that are compensated for purposes of overtime, will require interpretation of the CBA.

66.    Plaintiff's Complaint also includes unpaid minimum wage claims that Plaintiff and other putative class members did not receive "minimum wage for all the hours Plaintiff and the Minimum Wage Class worked." (Complaint, ¶¶ 41-48.) Since Plaintiff's claim for unpaid minimum wages is based on the same or similar conduct as the overtime claim, this cause of action is also subject to the LMRA preemption arguments set forth above, and will require interpretation of the CBAs. (*Loaiza*, 2020 WL 5913282, at *21 (To the extent a cause of action relies on an overtime violation, it is derivatively preempted to the same extent as a cause of action for failure to pay overtime).) Furthermore, the CBAs set forth the parties' mutual agreement regarding all issues pertaining to employee wages, including hours worked. (Gutchewsky Decl. ¶ 10, Exhibits 1-9.) For this additional reason, the allegedly-aggrieved employees' rights to wages, compensation, and overtime substantially depend on an analysis of the CBAs of 5 separate bargaining units.

67.    **Plaintiff's Meal Period Claims:** Plaintiff's complaint includes claims for Sims' alleged failure to provide compliant meal periods.  (Complaint, ¶¶ 24-29, 60-68.) Once again, these claims seek to vindicate rights that require analysis and interpretation of the CBA.

68.    California's meal period requirements do not apply to an employee covered by a valid collective bargaining agreement that satisfies the requirements of Labor Code § 512(e). Specifically, the meal period provisions do not apply to an employee specified in subdivision (f) if: (1) The employee is covered by a valid collective bargaining agreement; and (2) it expressly provides for the

wages, hours of work, and working conditions of employees, and expressly provides for meal periods for those employees, final and binding arbitration of disputes concerning application of its meal period provisions, premium wage rates for all overtime hours worked, and a regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate. (Lab. Code § 512(e).) Where § 512(e) applies, courts find the meal period claims preempted under Step 1 of the above LMRA preemption analysis. (*Araquistain,* 229 Cal.App.4th at 236, 238; *Coria,* 63 F.Supp.3d at 1097; *Mireles v. Paragon Syst. Inc.*, No. 13-cv-122 L (BGS), 2014 WL 4385453, at *5-6 (S.D. Cal. Sept. 4, 2014).) Furthermore, where an analysis of the plaintiff's meal or rest period claims are dependent on interpretation of the CBAs, the claims are also preempted on this basis. (*Chatman v. Wedriveu, Inc.*, No. 3:22-cv-04849-WHO, 2022 WL 15654244 (N.D. Cal. Oct. 28, 2022); *Raphael v. Tesoro Refining and Marketing Co., LLC*, No. 2:15-cv-02862-ODW (Ex), 2015 WL 3970293, at *6-7 (C.D. Cal. June 30, 2015); *Buck v. Cemex*, No. 1:13-cv-00701-LJO-MJS, 2013 WL 4648579, at *6 (E.D. Cal. Aug. 29, 2013).)

69.    Assuming, *arguendo*, that Plaintiff's underlying meal claims are valid, the CBAs expressly satisfy the requirements of § 512(e). Sims is engaged in a design, engineering, construction, and building occupation, and the CBAs provide the wages, hours of work, and working conditions, expressly provide for meal periods for covered employees, final and binding arbitration of disputes concerning application of its meal period provisions, premium wage rates for all overtime hours worked, and a regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate. (Gutchewsky Decl., ¶¶ 3, 9, 10; Exhibits 1-9.) As a result, the claims are preempted under Step 1 of the LMRA analysis, and the Court will have to engage in this analysis to resolve the claims.

70.    Moreover, the Court will need to interpret the CBAs to resolve any meal period claim. Each of the CBAs applicable to the 5 separate bargaining units provide for meal periods, and expressly lay out the conditions under which employees are entitled to such breaks. (Gutchewsky Decl., ¶ 10, Exhibits 1-9.) To resolve Plaintiff's meal period claims, the Court will have to determine the meaning of the various CBAs' requirements, which vary between the CBAs. This includes the CBAs' meal period timing requirements and the employee's obligation to take meal period.

71.    The Court will need to interpret these above provisions to resolve Plaintiff's meal

1    claims. The Court will also be required to interpret the other CBAs at issue for 5 separate bargaining

2    units, and conduct a similar analysis.

3        72.    **Additional Claims:** Plaintiff's failure to provide rest periods, timely pay all wages

4    claims (i.e., failure to timely pay all wages during employment and upon separation of employment),

5    wage statement claims, and unfair competition claims derive from his underlying claims. (*See*

6    Complaint, ¶¶ 69-76, 77-86,87-96, 97-100.) Thus, these claims are also dependent upon an analysis

7    and interpretation of the CBAs, as set forth above. (*See Curtis,* 913 F.3d at 1150, n. 3 (finding

8    inaccurate pay stub and final pay claims to be derivative of and dependent on underlying claims of

9    overtime, meal and rest period, and minimum wages); *Estrada v. Kaiser Foundation Hospitals*, 678

10   Fed. Appx. 494, 497 (9th Cir. 2017) (finding that when a claim derives from a LMRA-preempted

11   claim, the derivative claim also fails); *Jimenez v. Young's Market Co., LLC*, No. 21-cv-02410-EMC,

12   2021 WL 5999082 at *13 (N.D. Cal. Dec. 20, 2021) (finding that claims for failure to pay final wages

13   and provide accurate wage statements were preempted because they were derivative of substantive

14   claims for owed overtime and meal break violations).)[2]

15       73.    **Grievance and Arbitration Procedure:** Moreover, each of the CBAs expressly call

16   for final and binding arbitration for any and all disputes concerning the application or interpretation

17   of the CBAs' provisions. (Gutchewsky Decl., ¶¶ 10, 16; Exhibits 1-9.) Accordingly, all covered

18   employees of the various CBAs are subject to arbitration as the exclusive remedy per their respective

19   CBAs.

20       74.    The promotion of extra-judicial dispute resolution is another purpose of Section 301

21   preemption. State court lawsuits properly removed on preemption grounds may then be deferred to

22

23   _____

     [2] Plaintiff's remaining claims are also preempted. They are preempted because the CBA must be
24   interpreted to resolve the plaintiff's claims, and/or because they are derivative of preempted claims.
     *See Firestone*, 219 F.3d at 1066-67; *Estrada v. Kaiser Found. Hospitals*, 678 Fed.App 494, 497 (9th
25   Cir. 2017); *see, e.g.,* Gutchewsky Decl., ¶ 14, Exhibit 7, Article IV, Section C, pg. 6 (Company shall
     authorize and permit employees to take rest periods, which insofar as practicable shall be in the
26   middle of each work period. The authorized rest period shall be based on the total hours worked daily
     at the rate of ten (10) minutes net rest time per four ( 4) hours or major fraction thereof.) However,
27   given the clear preemption of the claims discussed, and the fact that the Court may clearly exercise
     supplemental jurisdiction of the remaining claims under 28 U.S.C. § 1367(a), Sims does not further
28   discuss the remaining preempted claims.

arbitration, if the parties to the CBA have so agreed. (*See Livadas v. Bradshaw*, 512 U.S. 107, 142 fn. 18 (1994).) As a result, the claims of the majority of the Putative Class Group are therefore subject to exclusive grievance procedures and arbitration as discussed above. Accordingly, any alleged violation of the various CBAs are subject to the grievance procedures set forth therein. As all of Plaintiff's claims are in essence alleged violations of the CBAs, the Court will necessarily have to interpret the grievance and arbitration provisions to analyze the claims in this case. That is, the Court will be required to determine whether the Putative Class Group was first required to exhaust the grievance procedures, whether they did in fact exhaust those procedures, and whether the parties agreed to arbitrate all or some of their claims. The exhaustion of administrative remedies is a procedural prerequisite to maintaining a Section 301 action. (*Smith v. Colgate-Palmolive Co.*, 943 F.2d 764, 767 (7th Cir. 1991).) Before filing suit, federal labor policy dictates that an employee is "[o]rdinarily ... required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement." (*DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163 (1983) (citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650 (1965)); *Smith*, 943 F.2d at 771.)

75.    Accordingly, the claims are substantially dependent upon the interpretation of the terms and provisions of the foregoing CBAs of 5 separate bargaining units. As a result, removal to federal court is warranted.

D.    The Court May Exercise Supplemental Jurisdiction of Plaintiff's Remaining Claim

76.    Pursuant to 29 U.S.C. § 1367(a), supplemental jurisdiction is appropriate when state and federal claims "derive from a common nucleus of operative facts." (*United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966); *see also, Van Bebber v. Dignity Health*, 1:19-cv-00264-DAD-EPG, 2019 WL 4127204, at *9 (E.D. Cal. Aug. 30, 2019) (exercising supplemental jurisdiction over a plaintiff's remaining causes of action because they arose out of the same employment relationship as their overtime claim).)

77.    As noted above, all of the claims are subject to LMRA preemption. But even if all somehow were not preempted, that issue need not be resolved now, because it presents no barrier to removal. Any remaining claims are largely derivative from the preempted labor code claims, and all arise from the common nucleus of operative facts that the Putative Class Group suffered wage and

hour violations. The Court should exercise supplemental jurisdiction over the claims pursuant to 28 U.S.C. § 1367(a) given that the claims all derive out of these alleged facts, and to avoid needless expense of judicial resources and the potential for inconsistent judgments due to parallel proceedings.

78. Specifically, Plaintiff's claims are predicated upon facts and circumstances that are inextricably intertwined with his underlying employment wage and hour claims, and dependent upon an interpretation of the CBAs of 5 separate bargaining units. In addition, the wage claims are intertwined with and dependent upon an interpretation of the CBAs. As a result, all the pleaded underlying Labor Code violations emanate from and form part of the same "case or controversy," such that they should all be tried in one action. (*See Nishimoto v. Federman-Backrach & Assoc.*, 903 F.2d 709, 714 (9th Cir. 1990); *Jimenez* 2021 WL 5999082, at *7 (noting, if only "some claims are completely preempted ... courts may find supplemental jurisdiction in the non-preempted claims if they arise out of a common nucleus of operative fact").) Specifically, courts routinely extend supplemental jurisdiction over wage and hour claims, even if they are not expressly subject to the LMRA preemption, on this basis. (*See, e.g., Jimenez,* 2021 WL 5999082 at *7; *Landy v. Pettigrew Crewing, Inc.*, No. 219CV07474RGKAFM, 2019 WL 6245525, at *5 (C.D. Cal. Nov. 22, 2019) (extending supplemental jurisdiction over PAGA claims not covered by the CBA); *Sachs,* 2022 WL 489696, at *6; *Armenta v. Stater Bros. Markets*, No. 5:20-cv-02364-MSC-KK, 2021 WL 1102444, at *3 (C.D. Cal. Mar. 23, 2021).) Given the above, considerations of convenience, judicial economy, and fairness to the litigants strongly favor this Court exercising supplemental jurisdiction over all the underlying alleged violations in Plaintiff's Complaint.

## IV.   SIMS HAS SATISFIED ALL OTHER PREREQUISITES FOR REMOVAL

79. ***Removal Was Timely***. Sims was served with Plaintiff's Complaint on December 4, 2024. (Childs Decl., ¶ 3.) This Notice is timely filed in accordance with 28 U.S.C. § 1446(b), because it is within thirty (30) days from when Sims was served with the pleadings setting forth the claims for relief upon which this removal is based. Under 28 U.S.C. Section 1446(b) and Federal Rule of Civil Procedure 6(a), the time to remove could not expire, at the earliest, until after January 5, 2024, the first day which is 30 days after Sims was served with the Summons and Complaint. (*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 US 344, 354 (1999).) This removal is timely.

80. **State Court Within this Court's Jurisdiction**. Venue is proper in the Northern District of California pursuant to 28 U.S.C. §§ 84(c) and 1391 because the county in which the State Court Action was pending (San Mateo) is found within this District.

81. **State Court Pleading Attached**. In compliance with 28 U.S.C. § 1446(a), true and correct copies of all "process, pleadings and orders" from the state court action served on Defendant or filed by Sims are attached hereto as the following exhibits, including Plaintiff's Summons, Complaint, Civil Case Cover Sheet, and Civil Lawsuit Notice (Exhibit A); Defendant's Answer to Plaintiff's Complaint (Exhibit B). (*See* Childs Decl., ¶¶ 2-4; Exhibits A-B.)

82. **Filing and Service of Notice of Removal**. This Notice will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California in and for the County of San Mateo.

83. If this Court has a question regarding the propriety of this Notice of Removal, Sims requests it issue an Order to Show Cause so it can provide additional briefing on the grounds for this removal, including further detail regarding the full amount in controversy.

## **RESERVATION OF RIGHTS**

This Notice of Removal is filed subject to and with full reservation of rights, including but not limited to defenses and objections to venue, improper service, and personal jurisdiction. No admissions are intended hereby as to the propriety of liability or damages with respect to any aspect of this case, and all defenses, motions, and pleas are expressly reserved.

WHEREFORE, Sims requests that the above action pending before the Superior Court of the State of California for the County of San Mateo be removed to the United States District Court for the Northern District of California.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

DATED:  January 3, 2025

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.


By: /s/ *Tracie Childs*
    Tracie Childs
    Cameron J. Davila
    Attorneys for Defendant SIMS GROUP USA CORPORATION